NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
JOSHUA M. GRAHAM,                   :
                                    :   Civil Action No. 14-7143 (RMB)
          Plaintiff,                :
                                    :
     v.                             :        **OPINION**
                                    :
DEAN BOWMAN, et al.,                :
                                    :
          Defendants.               :
_____:_____

**BUMB, District Judge:**

     This matter comes before the Court upon Plaintiff's
submission of a § 1983 complaint ("Complaint") and his
application to proceed in this matter in forma pauperis.  See
Docket Entries Nos. 1 and 1-1.  Based on his affidavit of
indigence, the Court will grant Plaintiff in forma pauperis
status, pursuant to 28 U.S.C. § 1915(a), and will order the Clerk
to file the Complaint.

     At this juncture, the Court must screen the Complaint,
pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine
whether it should be dismissed as frivolous or malicious, or for
failure to state a claim upon which relief may be granted, or
because it seeks monetary relief from an immune defendant.

     Here, the Complaint warrants dismissal with prejudice.
However, first, a brief review of the state court system is

warranted in light of the nature of Plaintiff's challenges that build on his eventually-abandoned "drug court" proceeding.

New Jersey "drug courts" are a chapter of the New Jersey Superior Court that holds criminal proceedings for certain types of offenders.[1] <u>See</u> Manual for Operation of Adult Drug Court is New Jersey, at 1, ("Drug Courts are a highly specialized team process that function within the existing Superior Court structure of address nonviolent drug-related cases"). Paramount here, the "drug court" system differs from the State's traditional criminal court system only in the scope of its operations since it allows those offenders who pass the required screening to enter guilty pleas in exchange for favorable sentences that include, but are not limited to,  drug-addiction treatment and a probation period that encompasses certain reporting and monitoring requirements, residential treatment programs and community work.  <u>See</u> <u>id.</u> at 9.  Since "drug courts"

---

[1]
    Drug courts began in New Jersey in 1996 when Camden and
    Essex Superior Courts started [their] pilot program
    efforts.  . . . [I]n June [2000,] the Judicial Council
    adopted drug courts as a "best practice" and called for
    a comprehensive statewide proposal.  . . .  On Sept.
    6, 2001, Legislation L.2001, c.243 was signed by the
    Governor [and yielded] a statewide drug court system
    [for] substance-abusing criminal offenders who are
    charged with non-violent offenses and who do not have
    prior convictions for violent crimes.

Adult Drug Court Programs, http://www.judiciary.state.nj.us/drug court/index.htm.

are state courts in each and every respect, all participants of
the "drug court" proceedings have their firmly allocated roles.
Consequently, the prosecutors participating in the "drug court"
proceedings act as advocates of the State, the "drug court"
judges act as tribunals presiding over criminal and post-
conviction proceedings, and the members of administrative staff
operate in a fashion substantively indistinguishable from that of
the Clerk's Office staff of any vicinage of the state or federal
court. See id. at 31. The sole difference between the courts
is, effectively, in the parlance used. Thus, the top supervising
administrative official of a "drug court" is commonly referred to
as "Criminal Division Managers," and (s)he performs the functions
analogous to those of a Deputy-In-Charge, while his/her first
assistant within the "drug court" is commonly referred to as a
"Team Leader" or "Coordinator" who performs the functions
analogous to those of an In-Court supervisor.

Here, the Complaint states allegations against the presiding
judge and Coordinator of the Cumberland County Drug Court, as
well as against the state prosecutor who represents the State in
that drug court vicinage. See id. at 4 (indicating that Hon.
Gary D. Wodlinger ("Judge Wodlinger") is the presiding tribunal
and Mr. Dean Bowman ("Bowman") is the Coordinator of the
Cumberland County Drug Court); see also Docket Entry No. 1, at 5

(naming Judge Wodlinger and Bowman, as well as prosecutor Walter Shultz ("Shultz") as Defendants in this matter).

The Complaint states Plaintiff's facts in a somewhat patchy fashion.  See, generally, Docket Entry No. 1.  If systemized, his allegations could be reduced to the following:

Plaintiff, who is now 25 years old, see Docket Entry No. 1-1, at 5, is a convicted state prisoner currently confined at the Garden State Youth Correctional Facility.[2]  See id.  About a year and a half prior to the convictions underlying his current incarceration, Plaintiff – then already a drug addict and a criminal offender – was prosecuted for his previous criminal violations and was approved for and accepted into the Cumberland County Drug Court program.[3]  See generally, Docket Entry No. 1.

Plaintiff asserts that, two years prior to his entry into the drug court program, he had opened a social media account on Facebook and placed on his account two photographs of himself, one displaying currency bills amounting to $150 and another

---

[2]  Plaintiff is now serving six concurrent sentences imposed upon his convictions of theft, controlled substance offenses and weapon offenses.  See https://www6.state.nj.us/DOC_Inmate/details?x=1500416&n=0 (indicating that Plaintiff's penal sentences were rendered on August 7, 2014).

[3]  Plaintiff states that his main pre-drug-court source of income was his gang-related activities.  See Docket Entry No. 1, at 6 ("I was on a drug court for a charge of conspiracy in the 3rd degree in the wire taps pertaining to a gang investigation so it wasn't new that I was a part of a gang") (grammar and spelling in original).

4

displaying $200.  Both photographs showed Plaintiff's tattoo
which read "Piru" and was, allegedly, inscribed onto his arm in
2005.  See Docket Entry No. 1, at 6.

According to the Complaint, Plaintiff was duly participating
in the drug court program for a certain, seemingly brief, period
of time until he was called for a drug court hearing on March 14,
2013.  See id.  Right before the hearing commenced, Bowman –
acting in his capacity as the Cumberland County Drug Court
Coordinator – informed Plaintiff that Judge Wodlinger would be
addressing the matters of those violators of the drug court
program who had placed and/or maintained inappropriate postings
on their Facebook accounts.  See id.  At the hearing, Judge
Wodlinger reflected on Plaintiff's Facebook photographs and
sanctioned Plaintiff to ten days in prison as a disciplinary
measure.  See id.  Being so sanctioned, Plaintiff became
belligerent and stated that the charge and the imposed discipline
were "bullshit."  See id.  Correspondingly, Judge Wodlinger
further disciplined Plaintiff, this time for contempt of court,
by an additional sentence of ten more days in prison.[4]  See id.

Plaintiff asserts that the disciplinary sanctions totaling
twenty days in prison caused him loss of his employment and loss

---

[4]  The Complaint is silent as to the role Shultz played in
these events, if any.  See, generally, Docket Entry No. 1.  At
most, it appears that Shultz might have been present at the
hearing and stood ready to advocate the position of the State.

of his place of residence.  See id.  He also asserts that, being

displeased with Judge Wodlinger's rulings, Plaintiff elected to

abandon his drug court program, to "relapse[] into drugs [and]

had to do criminal acts while on the run and in [his] addiction

to support [his] habit."  Id. (grammar in original).  Now,

blaming Judge Wodlinger, Bowman and Shultz for the elections he

made, Plaintiff seeks the following relief:

> I want the appropriate administrative action taking as
> far as the court concern.  And I want like counseling
> paid for by the courts.  And I would like $250,000 for
> pain, suffering, time and everything I lost.  It has
> been a big dominoe effect up to this point.

Id. at 7 (grammar and spelling in original).

　　　While this Court is mindful of Plaintiff's emotions, each of

his claims is facially deficient.

> Rule 8 . . . demands more than an unadorned,
> the-defendant-unlawfully-harmed-me accusation. . . . [A
> viable] complaint must contain sufficient factual
> matter . . . to "state a claim to relief that is
> *plausible on its face*."

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (emphasis

supplied); see also In re Synchronoss Secs. Litig., 705 F. Supp.

2d 367, 423 (D.N.J. 2010) (citing, inter alia, Kaplan v. United

States Office of Thrift Supervision, 104 F.3d 417, 423 (U.S. App.

D.C. 1997), for the observation that a "something was rotten in

the state of Denmark" type of allegation is facially

insufficient).

Here, Plaintiff asserted no constitutional wrong on the part of Judge Wodlinger, Bowman and Shultz, since Judge Wodlinger's act of rendering a disciplinary measure for Plaintiff's admitted conduct (i.e., placing and *maintaining* inappropriate postings on his Facebeek account) or Bowman's act of notifying Plaintiff that Judge Wodlinger would be conducting hearings based on such violations, or Shultz's act of being present in the courtroom were *not* acts capable of violating Plaintiff's constitutional rights.  Put another way, there is no constitutional provision offering Plaintiff a guarantee against any of these acts.

Moreover, even if this Court were to hypothesize that Judge Wodlinger, Bowman and Shultz did, somehow, act in a wrongful fashion, these Defendants are immune from Plaintiff's suit.  The doctrine of absolute judicial immunity provides that "judges are immune from suit under section 1983 for monetary damages arising from their judicial acts."  Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000); see also Mireles v. Waco, 502 U.S. 9 (1991) (per curiam).  To determine whether the judicial immunity doctrine applies, this Court must determine: (a) whether the judge's challenged act was "judicial" in nature;[5] and (b)

---

[5] An act is judicial in nature if "it is a function normally performed by a judge" and if the parties "dealt with the judge in [her] judicial capacity." Stump, 435 U.S. at 362. Importantly, "[a plaintiff's] allegations of bad faith [and] malice" on the part of the judge cannot overcome judicial immunity. Abulkhair v. Rosenberg, 457 F. App'x 89 (3d Cir. 2012)

whether the judge acted in the "clear absence of all jurisdiction over the subject matter." <u>Gallas</u>, 211 F.3d at 768-69 (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 n.6 (1978)). Here, Judge Wodlinger acted within his jurisdiction as the appointed tribunal of the Cumberland County Drug Court, and he entered a penal ruling, <u>i.e.</u>, performed a function normally performed by a judge. Correspondingly, Plaintiff's claims against Judge Wodlinger are barred by absolute immunity and must be dismissed.[6]

Plaintiff's claims against Bowman fare no better.  The Court of Appeals for the Third Circuit has extended quasi-judicial immunity to court clerks who are alleged to have acted incorrectly or improperly in carrying out their official duties. <u>See</u>, <u>e.g.</u>, <u>Wicks v. Lycoming Co.</u>, 456 F. App'x 112, 115 (3d Cir. 2012) (finding that court administrator was entitled to absolute immunity for transferring case from one judge to another); <u>Wallace v. Abell</u>, 217 F. App'x 124 (3d Cir. 2007) (holding Clerk

---

(quoting <u>Mireles</u>, 502 U.S. at 11).  Simply put, "an act does not become less judicial by virtue of an allegation of malice or corruption of motive," or that such action contains a legal or factual error, or was "unfair" or "controversial." <u>Gallas</u>, 211 F.3d at 769.

[6]  Plaintiff's opinion that Judge Wodlinger's findings of Plaintiff's guilt were "bullshit" merely amounts to a disagreement with the decisions rendered by Judge Wodlinger.  The appropriate method for addressing such a disagreement was an appeal of Judge Wodlinger's decisions. <u>See</u> <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967) ("Any errors made by a judge may be corrected on appeal").

8

of Court absolutely immune from a suit for damages for discretionary acts, and that court personnel are qualifiedly immune for non-discretionary acts such as entering orders and notifying parties); see also Alfred v New Jersey, 2013 U.S. Dist. LEXIS 124418 (D.N.J. Aug. 29, 2013) (holding that Court Administrator is entitled to "at least" qualified immunity for his authorization of an arrest warrant issued by a judge, as the action is "integral to the judicial function and within the responsibility assigned to court personnel").

Here, Plaintiff asserts that Bowman notified him, right prior to Judge Wodlinger's hearing, that Judge Wodlinger would be addressing the violations committed by the drug court participants who placed or maintained inappropriate postings on their Facebook accounts.  Such notification of Plaintiff, a party to his drug court proceeding, squarely falls within Bowman's official duties.  Since Bowman's act was integral to the judicial function and within the responsibility assigned to court personnel, Bowman is entitled to, at the very least, qualified immunity.  Correspondingly, Plaintiff's claims against Bowman are barred and necessarily subject to dismissal.

Finally, Plaintiff's claims against Shultz fare even worse. Prosecutors are absolutely immune from actions under § 1983 for "initiating and pursuing a criminal prosecution." Kalina v. Fletcher, 522 U.S. 118, 123 (1997) (quoting Imbler v. Pachtman,

424 U.S. 409, 410 (1976)).  Thus, "a state prosecuting attorney
who act[s] within the scope of his duties initiating and pursuing
a criminal prosecution" is not amenable to suit under § 1983.
Imbler, 424 U.S. at 410.  Correspondingly, a prosecutor's
appearances/ statements made in court or applications for
favorable-to-the-State decisions, or briefs advocating the
State's position are protected by absolute immunity.  See Burns
v. Reed, 500 U.S. 478, 492 (1991).  Similarly, the "acts
undertaken by a prosecutor in preparing for the initiation of
judicial proceedings or for trial, and which occur in the course
of his role as an advocate for the State, are entitled to the
protections of absolute immunity." Buckley v. Fitzsimmons, 509
U.S. 259, 273 (1993).

    Here, Plaintiff failed to even state what, if anything,
Shultz did.  As noted supra, see this Opinion, note 4, this Court
cannot rule out that Shultz made an appearance during Plaintiff's
hearing before Judge Wodlinger and stood ready to advocate the
position of the State that Plaintiff committed a violation of the
drug court program by maintaining the photographs at issue on his
Facebook account.  Since Shultz's appearance in the courtroom is
an action clearly falling within the activities of an advocate
for the State, that appearance is protected by prosecutorial
immunity.  Hence, Plaintiff's claims against Shultz will be
dismissed.

In sum, no matter how this Court were to view the Complaint, all Plaintiff's challenges are facially deficient.[7]  Moreover, the deficiency is such that Plaintiff cannot cure it by re-pleading.  For this reason, the Complaint will be conclusively dismissed in its entirety for failure to state a claim upon which relief can be granted.[8]

An appropriate Order follows.

---

[7]  Plaintiff tries to stitch the injuries he caused himself to Defendants by claiming that it was a "domino effect." Plaintiff, however, fails to observe that the "domino effect" he has described resulted from: (a) *his own decision* to maintain the inappropriate photographs on his Facebook account; (b) *his own decision* to challenge Judge Wodlinger's decision sanctioning him for this violation; (c) *his own decision* to abandon the drug court program; (d) *his own decision* to return to his drug habits; and (e) *his own decision* to return to the life of crime.  Each and every of these elections was Plaintiff's *own*, not Judge Wodlinger's or Bowman's, or Shultz's.  While Plaintiff seeks to qualify these Defendants as the source of his self-inflicted ills, Plaintiff would be well advised to take stock in his elections and to control his temper and disappointment when presented with life events that he might perceive as unfortunate.

[8]
[Where] the District Court . . . conclude[s] that [the plaintiff's] filings [are] inadequate, . . . [leave to amend] must be granted in the absence of . . . futility of amendment.  [See] Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Since, here, Plaintiff's claims are expressly limited to the challenges based on the acts taken by Plaintiff's presiding judge in the judge's official capacity, the Coordinator in course of performing his official duties and the prosecutor in his capacity as an advocate for the State, it is apparent that granting Plaintiff leave to amend those claims would be futile.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: November 21, 2014